# EXHIBIT 2

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL DIVISION

---------------------------------------------------------------- x
STRAIGHT A COMPANY, LP,  :
 : Case No. _____
           Claimant, :
 :
  -against- :
 : **STATEMENT OF CLAIM**
LA APPAREL, INC., :
 :
           Respondent. :
---------------------------------------------------------------- x

       Claimant Straight A Company, LP ("Straight A"), by and through its undersigned attorneys, as and for its Statement of Claim against respondent LA Apparel, Inc., ("LA"), alleges as follows:

## INTRODUCTION

    1.     This arbitration arises out of the bad faith actions and inaction of respondent LA, one of the two members of Concorde Apparel Company, L.L.C. ("Concorde," or the "Company"), a Delaware limited liability company with an address at 300 Brook Street, Scranton, Pennsylvania. Concorde is engaged in the business of styling and marketing men's apparel products.

    2.     Claimant Straight A and respondent LA are the only two members of Concorde, each owing 50% of the Company, and are the sole parties to the Operating Agreement of Concorde Apparel Company, L.L.C., effective as of August 25, 1994 (the "Operating Agreement"), a true and correct copy of which is annexed hereto as Exhibit A. The Company is member-managed, with one manager nominated by each of the two members. (Operating Agreement §§ 5.01, 5.02.) Since its formation, the two managers of Concorde have always been James Alperin (nominated by Straight A) and Lee Wattenberg (nominated by LA). (See

{1189157.1}                                  1

Operating Agreement § 5.02). The responsibilities of the managers are set forth in Sections 5.05 and 6.07 of the Operating Agreement as well as Exhibit A thereto.

3.  The gross operating profits of Concorde for each fiscal year are to be allocated as set forth in Section 9.03 of the Operating Agreement. In turn, Section 9.04 of the Operating Agreement sets forth the mechanisms for fiscal year distributions to Concorde's members, with certain amounts are to be paid on a current basis (*see* Section 9.04(a)) and the remainder of gross operating profit to be paid after the close of such fiscal year (*see* Section 9.04(b)). Specifically, Section 9.04(b) requires the members to endeavor to agree on the Company's financial statements within ninety (90) days of the conclusion of a given fiscal year and, promptly thereafter, make the remaining distributions of gross operating profits.

4.  Concorde's 2018 fiscal year concluded on December 31, 2018.

5.  While, internally, Concorde's financial statements were ready on February 27, 2019, at LA's request, Concorde's independent accounting firm did not perform its annual review of such financial statements until some months later.

6.  On July 16, 2019, Concorde's accountant, Eric Davis of Ginader, Jones & Co., LLP, sent Messrs. Wattenberg and Alperin an email attaching both (i) a draft of Concorde's 2018 reviewed financial statements; and (ii) a "calculation of the Company's allocation of its Gross Profit per the Concorde Operating Agreement." A true and correct copy of such email with attachments is annexed hereto as Exhibit B. Without providing a substantive reason, Mr. Wattenberg, on behalf of LA and in bad faith, indicated he would not "sign a rep letter" and obscurely stated that he did not "agree with numbers as presented." *See* Exhibit B. Despite two (2) follow-up emails from Mr. Alperin, Mr. Wattenberg would not commit in writing to that which he and LA disagreed with or the reasons therefor. *See id.*

{1189157.1}                                2

7. As Operating Agreement Section 6.07(a) and Exhibit A thereto make clear, however, Mr. Alperin is *solely* responsible for Concorde's "Accounting and Bookkeeping." Concorde therefore issued its fiscal year 2018 financial statements on September 15, 2019, when it could no longer wait given 2019 tax deadlines. A true and correct copy of Concorde's 2018 Financial Statements with accompanying Independent Accountant Review Report are annexed hereto as Exhibit C. While LA has not made any substantive objection to such financial statements, Mr. Wattenberg has nonetheless refused to authorize the distribution of the Company's remaining gross profits as provided in Sections 9.03 and 9.04 of the Operating Agreement.

8. Mr. Wattenberg's unilateral refusal is part of what has unfortunately become a pattern of obstruction and delay in a bad faith attempt to coerce Straight A into changing the way Concorde's gross operating profits are allocated in Section 9.03 of the Operating Agreement. In fact, LA and Mr. Wattenberg seek to enrich themselves by either short-changing Straight A of its fair share of Concorde profits or, alternatively, acquiring Straight A's membership interests well below market value.

9. Irrespective of Mr. Wattenberg's wish list, Straight A is entitled to prompt payment of its share of Concorde's gross profits per the clear and unambiguous terms of the Operating Agreement.

## THE PARTIES

10. Claimant Straight A is a limited partnership organized under the laws of the Commonwealth of Pennsylvania. James Alperin manages the general partner of Straight A. Alperin is also the Concorde manager nominated by Straight A.

{1189157.1}                                  3

11. Respondent LA is, upon information and belief, a business corporation that was formerly incorporated under the laws of the State of New York. Claimant has been unable to determine whether LA is currently incorporated and, if so, in which jurisdiction. Lee Wattenberg is, upon information and belief, the president of LA and signed the Operating Agreement on its behalf in his capacity as president. Wattenberg is also the Concorde manager nominated by LA.

## KEY TERMS OF THE OPERATING AGREEMENT

12. Section 5.05 of the Operating Agreement mandates that Concorde's managers "perform their managerial duties in good faith, in a manner they reasonably believe to be in the best interests of the Company."

13. Checks drawn on the Company's bank accounts require the signature of both managers, as provided in Section 5.06 of the Operating Agreement:

> 5.06. <u>Bank Accounts</u>. The Managers may from time to time open bank accounts in the name of the Company, and the Managers shall, except as herein set forth, be the sole signatories thereon, unless the Members, by unanimous vote, determine otherwise. <u>The signatures of both Managers will be required on all checks, drafts, or withdrawals therefrom</u>. Notwithstanding the foregoing, a Manger can sign checks without the other Manager's signature for prior approved purchase orders or other invoices or bills pre-approved by the other Manager.

(Emphasis added.)

14. Section 6.07 identifies certain services to be provided by each of the managers of Concorde. Pursuant to Section 6.07(a), Straight A may designate to Alperin, Inc. (now known as

{1189157.1}   4

Astro Apparel, Inc. ("Astro")) and/or other providers Straight A's responsibility to "bear all costs and expenses of shipping and administration."[1]

15. The profits of Concorde are allocated as set forth in Section 9.03 of the Operating Agreement:

> 9.03. Profits. The gross operating profit of the Company shall be determined for each fiscal year. The gross operating profit shall equal the gross revenues of the Company, minus all costs and expenses normally taken into account in determining net income, other than the costs and expenses borne by Straight A and LA pursuant to sections 6.07(a) and (b). The gross operating profit shall be allocated in the following order of priority:
>
> (i) first, five percent of net sales as a reserve for profits, to the Members in accordance with their respective Shares of Total Capital;
>
> (ii) second, to Straight A, in respect of the services provided pursuant to section 6.07(a), an amount equal to 6% of net sales;
>
> (iii) third, to LA, in respect of the services provided pursuant to section 6.07(b), $546,000;
>
> (iv) fourth, to Straight A, in respect of the services provided pursuant to section 6.07(a), an amount equal to 2% of net sales;
>
> (v) fifth, any remaining gross profit shall be allocated 10% to Straight A and 90% to LA.

---

[1] Straight A has, in fact, provided the services to Concorde contemplated by Section 6.07 through Astro. Because Astro provided the services, there have been occasions were Straight A instructed Concorde to pay Astro directly.

{1189157.1}    5

16. Distributions are to be paid by Concorde pursuant to Section 9.04 of the Operating Agreement:

> 9.04 Distributions. (a) The Company shall pay on a current (weekly) basis the following amounts to the Members:
>
> (i) to Straight A, an amount equal to 6% of net sales (payable in cash as net sales are accrued under generally accepted accounting principles); and
>
> (ii) to LA, $10,000 per week (effective as of July 1, 1995), payable by wire transfer of immediately available funds on the first business day of each week, in advance.
>
> (b) Within 90 days after the end of each fiscal year of the Company, the Members shall endeavor to agree on the financial statements of the Company for such year. If they are unable to agree within such time period, they shall invoke the arbitration provisions of section 13.15, below. Promptly after the financial statements have been agreed to, or promptly after the arbitrator shall have rendered his decision, the Company shall distribute to each member the undistributed amounts of gross profit for the preceding year allocated in accordance with the allocation priorities set forth in section 9.03. In the event that the Company shall have distributed to LA during the preceding fiscal year pursuant to section 9.04(a)(iii) an amount in excess of the amount to which it was allocated under section 9.03(i) and (iii), LA shall repay such excess, without interest, to the Company within thirty (30) days after the financial statements have been agreed.

17. The Operating Agreement is "governed exclusively by its terms and by the laws of the State of Delaware." *See* Exhibit A, Section 13.03.

18. Amendments to the Operating Agreement may only be made by unanimous written consent of all of Concorde's members. *See* Exhibit A, Section 13.05.

## AGREEMENT TO ARBITRATE

19. Pursuant to Section 13.15 of the Operating Agreement, the members agreed to submit all disputes relating to the operation of Concorde to binding arbitration. Section 13.15 provides, in relevant part:

> 13.15 <u>Arbitration</u>. Without limiting the ability of a Member to give a notice of withdrawal at any time, the Members agree to submit to binding arbitration in accordance with this Section any issue relating to the operations of the Company as to which they cannot agree. Either Member may refer an issue to arbitration after it shall have given written notice to the other that the issue will be submitted to arbitration unless the issue has been resolved within a period of not less than ten (10) days from the date of the notice.

20. By letter dated November 20, 2019, a true and correct copy of which is annexed hereto as <u>Exhibit D</u>, Straight A gave LA written notice that if undistributed amounts of gross profit were not paid (including the amounts owed in respect of the services Astro, as Straight A's designee, provided Concorde pursuant to Section 6.07(a)), Straight A would commence arbitration. As set forth throughout this Statement of Claim, the issue has not been resolved as Mr. Wattenberg and LA continue to refuse to authorize Concorde's distribution of the gross profit contractually owed to Straight A in the amount of at least $393,988.38.

## ADDITIONAL FACTS

21. Astro (Straight A's designee to perform "shipping and administration" services pursuant to Section 6.07(a) of the Operating Agreement) was established by Mr. Alperin as a "hub" operation to manage "back-end" activities of several selling and merchandising companies. Mr. Alperin and Astro were successful in this endeavor, with Astro experiencing many efficiencies of scale due to the "hub's" numerous "spokes."

22. In the past, when Straight A received less of Concorde's gross profit than it was entitled to receive pursuant to Sections 9.03(ii) and 9.03(iv) of the Operating Agreement, Astro's

efficiencies of scale mitigated against Straight A being short-changed. Effectively, in 2017 and prior years Straight A ended up providing Concorde (and, by extension, LA) more than it was entitled to under the contract.[2] Of course, doing so was never, and is not now, an obligation of Straight A. Conversely, it remains Concorde's obligation to distribute to Straight A its contractual share of gross operating profit pursuant to the terms of the Operating Agreement.

23. By late 2017 the non-Concorde businesses that Astro serviced were sold off or closed, eviscerating Astro's economies of scale. Said another way, Astro lost its "spokes." At that point, Mr. Alperin took the proactive step of informing Mr. Wattenberg that Straight A would no longer be in a position to take less than it is entitled to receive. Mr. Alperin also suggested a number of alternative courses of action for Concorde and its business.

24. Since that time, Concorde – and by extension LA – have continued to benefit from Astro's services. Unfortunately, LA and Mr. Wattenberg are now blocking the distribution of Straight A's contractual share of Concorde gross profits – for no other reason than an avaricious desire to renegotiate the contract or otherwise acquire Straight A's share of Concorde for far less than it is worth.

25. At bottom, Concorde has failed to make required member distributions in accordance with Sections 9.03 and 9.04 of the Operating Agreement for fiscal year 2018, and such distributions have remained unpaid during the entirety of calendar year 2019. Concorde has failed to make such distributions of gross profits because Wattenberg, in bad faith, refuses to sign the checks authorizing such payments, which require the signatures of both of the Company's managers.

---

[2] For example, in 2017, Straight A should have been paid another $324,822 by Concorde; instead LA inequitably benefitted.

{1189157.1}                                8

26. With 2019 now coming to a close, LA and Wattenberg's bad faith conduct will only be exacerbated as additional gross operating profits will come due for payment to Straight A.

### FIRST CLAIM FOR RELIEF

27. Straight A repeats and realleges each of the allegations set forth in paragraphs 1 through 26 of this Statement of Claim as if set forth fully herein.

28. Straight A and LA are parties to a valid and enforceable contract, namely, the Operating Agreement.

29. Straight A has performed, and continues to perform, all of its obligations under the Operating Agreement.

30. LA has breached the Operating Agreement by, among other things, failing to authorize the Company to distribute the gross profits of the Company as provided in Sections 9.03 and 9.4 of the Operating Agreement.

31. As a result of LA's breaches, Straight A has suffered and continues to suffer damages in an amount to be determined at the hearing of this arbitration, but not less than $393,988.38.

### SECOND CLAIM FOR RELIEF

32. Straight A repeats and realleges each of the allegations set forth in paragraphs 1 through 31 of this Statement of Claim as if set forth fully herein.

33. A covenant of good faith and fair dealing is implied in all contracts, including the Operating Agreement.

34. In the context of the Operating Agreement, there is an implied obligation for each of the managers appointed by the members to sign the checks necessary for the operations of the Company.

35. LA has breached the implied covenant of good faith and fair dealing by, among other things, failing to act in good faith to authorize the checks necessary for the Company to distribute gross profits as provided in Sections 9.03 and 9.04 of the Operating Agreement and by refusing to authorize such checks on the basis of improper motives or to gain advantage in negotiations with Straight A.

36. As a result of LA's breaches, Straight A has suffered and continues to suffer damages in an amount to be determined at the hearing of this arbitration, but not less than $393,988.38.

## DEMAND

**WHEREFORE**, Claimant Straight A demands that the arbitrator render an award in favor of Straight A and against Respondent LA:

A. Declaring that Respondent LA Apparel, Inc. is in breach of the Operating Agreement;

B. Ordering Respondent LA Apparel, Inc. to direct Lee Wattenberg, in his capacity as a manager of Concorde Apparel, L.L.C., to authorize and sign all checks necessary to make distributions of the gross net profits of Concorde Apparel, L.L.C. for the fiscal year 2018 to the members of the Company as provided in Sections 9.03 and 9.04 of the Operating Agreement; and

C. Ordering Respondent LA Apparel, Inc. to direct Lee Wattenberg, in his capacity as a manager of Concorde Apparel, L.L.C., to authorize and sign all checks necessary to make

distributions of the gross net profits of Concorde Apparel, L.L.C. for the fiscal year 2019 and all future fiscal years to the members of the Company as provided in Sections 9.03 and 9.04 of the Operating Agreement and;

  D. Awarding Claimant Straight A: (i) pre-award interest on its share of Concorde's undistributed gross operating profit from September 15, 2019 forward, (ii) its costs of this arbitration, and (iii) its attorneys' fees; or, in the alternative,

  E. Awarding Claimant Straight A Company, LP damages in the amount of $393,988.38, together with pre-award interest thereon from September 15, 2019, attorneys' fees and arbitration costs.

Dated: New York, New York
   December 31, 2019

            **WARSHAW BURSTEIN, LLP**

            /s/ Thomas Filardo
            Thomas Filardo
            575 Lexington Avenue
            New York, New York 10022
            (212) 984-7700
            *Attorneys for Claimant*
            *Straight A Company, LP*



**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

*For Consumer or Employment cases, please visit www.adr.org for appropriate forms.*

| | |
|---|---|
| You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement. | |
| Name of Respondent: LA Apparel, Inc. | |
| Address: 55 West 39th Street, 11th Floor | |

| City: New York | State: New York | Zip Code: 10018 |
|---|---|---|
| Phone No.: 212-307-7848 | Fax No.: | |

| | |
|---|---|
| Email Address: lee@adolfo.com | |
| Name of Representative (if known): Unknown | |
| Name of Firm (if applicable): | |
| Representative's Address: | |

| City: | State: Select... | Zip Code: |
|---|---|---|
| Phone No.: | Fax No.: | |

Email Address:

The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Brief Description of the Dispute:

Dispute among members of an LLC regarding distributions of profit. See accompanying Statement of Claim of Claimant Straight A Company, LP for a full recitation of the claims asserted to date.

Dollar Amount of Claim: $ at least $393,988.38

Other Relief Sought: ☑ Attorneys Fees  ☑ Interest  ☑ Arbitration Costs  ☐ Punitive/Exemplary
☐ Other:

Amount enclosed: $ 2,200.
In accordance with Fee Schedule: ☑ Flexible Fee Schedule  ☐ Standard Fee Schedule

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:

Former Judge familiar with operating agreements. Some familiarity with the Delaware Limited Liability Company Act a plus.

Hearing locale: Scranton, PA
(check one) ☑ Requested by Claimant  ☐ Locale provision included in the contract

| Estimated time needed for hearings overall: | hours or 2 | days |
|---|---|---|

*Please visit our website at www.adr.org if you would like to file this case online.*
*AAA Case Filing Services can be reached at 877-495-4185.*



**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

| Type of Business: | |
|---|---|
| Claimant: apparel-related | Respondent: apparel-related |

Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other?
No

| Signature (may be signed by a representative): | Date: 12/31/19 |
|---|---|

Name of Claimant: Straight A Company, LP