# EXHIBIT 3

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL DIVISION
-----------------------------------------------------------------------X

STRAIGHT A. COMPANY, LP,

        Claimant,

    -against-

LA APPAREL, INC.,

        Respondent.,
-----------------------------------------------------------------------X

Case No.
01-19-0004-6511

**ANSWER**

Respondent LA APPAREL, INC. ("LA"), by and through their attorneys,

Kaufman & Serota, P.C., as and for their Answer to the Statement of Claim of Claimant, Straight

A Company, LP ("Straight A"), respectfully alleges:

## **INTRODUCTION**

1.  This arbitration has been brought by Claimant to seek an interpretation of the Operating
    Agreement of Concorde Apparel Company, L.L.C. ("Concorde or the "Company"), a
    Delaware limited liability company., as same has been amended and modified between the
    Claimants and Respondent.

2.  The Company has been engaged in the business of styling, marketing and sales of men's
    apparel products since its inception, on or about, August 1994.

3.  Respondent, LA, and Claimant, Straight A, are the sole members of the Company with each
    owning Fifty (50%) Percent of the Company. The Members are the sole parties to the
    Concorde Operating Agreement, dated August 25, 1994 (the "Operating Agreement") a true
    and copy of which is Annexed to Claimants Statement of Claim as Exhibit A.

1

4. The Operating Agreement provides for the Company to be member-managed with one manager to be nominated by each of the two (2) Members. (Operating Agreement §§ 5.01, 5.02). Since its formation, the two (2) Managers of the Company have always been Lee Wattenberg (nominated by LA) and James Alperin (nominated by Straight A). (See Operating Agreement § 5.02).

5. The rights, obligations and duties of the Managers are set forth in §§ 5.01, 5.03, 5.04, 5.05. 6.07 and Schedule A to the Operating Agreement. Specifically, Straight A is delegated the responsibility for Accounting and Bookkeeping. (See Schedule A to the Operating Agreement).

6. The Operating Agreement is defined  "as originally executed and as amended from time to time". See Operating Agreement 1.01 (r).

7. The Operating Agreement provided for an original formula to be used in allocating Concorde's Profits and Concorde's Distribution (Operating Agreement §9.03 and § 9.04 respectfully).

8. Straight A, as per its obligations, for the Accounting and Bookkeeping of the Company, under its Operating Agreement, annually, prior to the preparation of Tax Returns prepared in writing  a "Rep Letter" and delivered same to LA for approval.

9.  Sometime after the signing of the Operating Agreement in late August 1994 and the Tax Year 1998 the original formulas scribed in the Operating Agreement were reviewed, negotiated and modified to reflect an amended formula to be used going forward.  The parties negotiated, agreed, amended, and annually ratified the amended formula of the Operating Agreement for Tax Years 1998 through and including Tax Year 2017.

2

10. Annually, Straight A has delivered to LA a "rep letter" to be signed acknowledging the proposed Profits and Distribution of the Company. Historically, the Rep Letter followed the modified formula, and LA after its review, and in accordance with the amended formula acknowledged and agreed to the Profits and Distribution of same. Upon information and belief, after being ratified by the Members the calculations are then sent to the Accountant. After Eighteen (18) Years of using the amended formula Straight A unilaterally, and in bad faith, attempted to revert to the original 1994 formula found in the Concorde Operating Agreement. Straight A has purported to further amend and modify the Operating Agreement without the consent of LA as required in the Operating Agreement and the Delaware Limited Liability Company Act .

11. Straight A, approximately Eighteen (18) years later, is attempting to unilaterally amend the Profit and Distribution formula used by the Company. Straight A claims it is necessary to revert to the original formula because it is no longer making its anticipated profit. In its Statement of Claim Straight A blames the need to modify the Operating Agreement because it no longer can benefit from its association with unrelated businesses. Of note, LA has no financial interest in any other businesses of Straight A.

12. Mr. Alperin contrives a narrative that out of his kindness and Straight A's ability to make money in the past, through other non associated entities, that Straight A has provided "accommodations" to LA in calculating the formula previously used the past Eighteen (18) Years. It is clear Mr. Alperin is attempting to renegotiate a long standing agreement because Straight A's third party businesses no longer exist which is compounded by the anticipated dissolution of the Company pursuant to the terms of the Operating Agreement and Mr. Alperin's desire to have his interests be bought at an unrealistic valuation.

3

13. LA received the 2018 "Rep Letter" and did not agree with the use of the ancient retired
    formula and would not 'sign off' on the erroneous calculations of the Gross Profits. Again,
    of importance, this was the first time in Eighteen (18) Years where Mr. Alperin used the
    retired formula, coincidentally resulting in a significant financial windfall to Straight A at
    the sole cost of LA.

14. At a minimum the annual "Rep Letters", require the unanimous consent of the Members and
    the Managers signatures on the distribution checks which serve as multiple writings
    memorializing the Members mutual agreement. These writings indisputably memorialize the
    amended operating agreement formula and by the clear actions of the Members are enough
    under Delaware Law to establish the intent of the Members to distributions in accordance
    with the adopted modified Operating Agreement formula. Its approved Rep Letters and
    signed checks clearly serve as a written modification to the Operating Agreement, which
    modified, amended and annually ratified the amended formula used to determine
    Concorde's Profits and Distribution.

15. The "Operating Agreement, and the application of interpretation hereof, shall be governed
    exclusively by its terms and by the laws if the State of Delaware." Operating Agreement
    § 13.03.

16. The "Operating Agreement may not be amended except by the unanimous written
    agreement of all the Members." Operating Agreement §13.05.

17. Under §18-101 (7) of the Delaware LLC Act an LLC agreement is defined as "any
    agreement . . .**written, oral or implied**, of the member or members as to the affairs of a
    limited liability company and the conduct of its business" The section further expands that

4

an LLC member "is bound by the limited liability agreement whether or not the member or manger or assignee executes the limited liability company agreement."

18. By way of example, the attached ledgers accompanied the Rep Letters that were provided to LA by Straight A for review, approval and ratification of the Concorde's profits and distribution. Of note, the formula continuously used is the revised, amended and agreed formula that has been used for over Eighteen Years, attached are Tax Years 1998, 2006, 2009, 2010, 2012, 2013 and 2014 showing the Profit and Distribution. See Exhibit A.

19. In an email dated June 1, 2016 Mr. Alperin memorializes the that the original formula, as in previous years, was not used and a modified formula was agreed to and used for the 2015 Profits and Distribution. Of note, the email further discusses the Members would "review the formula for 2016". See Exhibit B.

20. Additionally, Mr. Alperin, in an email dated September 3, 2019 states, "[i]n the past [LA] and I both agreed to deviations from the in force operating agreement." It further goes on to say that Mr. Alperin, unilaterally, does not agree to the "deviation" for 2018. See Exhibit C. Whether it's called a deviation or an amendment is irrelevant, the Operating Agreement cannot be modified at the whim of one Member especially when it deprives a Member of its contractual rights previously established by the writings and the prior actions of the Members.

21. The Members never agree to revert to the original 1994 formula and any assertion that the original formula somehow became the agreed terms of the Members is preposterous.

22. In stark contrast to the agreed terms Straight A delivered a ledger in 2019 attempting to calculates tax year 2018 using the original formula which was outright rejected by LA. See Exhibit D.

5

23. Of significance, an email from Concorde's Certified Public Accountant clearly supports Respondent's defense. Wherein Eric Davis, CPA writes "[a]s you know, since our Firm has represented Concorde (15 years), we have always worked with a Net Income of . . .[t]his method is **different** from the specs in the Agreement." Emphasis added. See Exhibit E.

   **PLEASE TAKE FURTHER NOTICE,** that Respondent interposes the following answer to the Statement of Claim.

## ANSWER FIRST CLAIM FOR RELIEF

24. LA herein repeat, reiterate and reallege each and every allegation and denial as set forth in paragraphs "1" through "23" of this Answer as set forth fully and at length herein.

25. Responding to Paragraph 28 of the Statement of Claim the Respondent state that the Operating Agreement speaks for itself and the Arbitrators determination.

26. Responding to Paragraph 29, 30 and 31 of the Statement of Claim Respondent deny each and every allegation contained therein.

## ANSWER SECOND CLAIM FOR RELIEF

27. LA herein repeat, reiterate and reallege each and every allegation and denial as set forth in paragraphs "1" through "26" of this Answer as set forth fully and at length herein.

28. Responding to Paragraph 33 of the Statement of Claim the Respondent state that the Operating Agreement and Delaware LLC Laws speaks for itself and the Arbitrators determination.

29. Responding to Paragraph 34, 35 and 36 of the Statement of Claim Respondent deny each and every allegation contained therein, except admit that LA has not authorized the checks to distribute the profits of the Company.

6

## FIRST DEFENSE

30. Respondent alleges as though fully repeated here the allegations made and set forth at paragraphs '1' through '29' above

31. Claimant has breached the implied covenant of good faith and fair dealing by unilaterally attempting to revise the Operating Agreement and revert to the original Profit and Distribution formula without the unanimous written consent of Member, LA.

32. The Claimant has not asserted its right to use the original retired formula prior to Tax Year 2018, to use the original ancient formula, which has not been used over the past Eighteen Years, is in contradiction to the Operating Agreement as it has been modified by the parties. The Claimant should be Estopped from asserting its self serving claim of "accommodation" and its disingenuous claim that the formula was never modified. The Respondent has acted in good faith and in reliance of the revised agreed formula which has been used to determine Profits and Distributions for the past Eighteen Years.

33. As a result of Straight A's breaches, LA has suffered and continues to suffer damages in an amount to be determined at the hearing of this arbitration.

## SECOND DEFENSE

34. Respondent alleges as though fully repeated here the allegations made and set forth at paragraphs '1' through '33' above.

35. A determination by the Arbitrator that the Profits and Distribution formula was appropriately modified and to apply the modified formula to determine Profits and Distribution pursuant to same in an accurate accounting.

**WHEREFORE,** Respondent respectfully requests that Claimant's Straight A

demands are denied, and the Arbitrator determine the proper formula to be used in calculating

Profits and Distribution of Concorde and direct the distribution of same in accordance with the

modified formula which was validly amended by the unanimous consent of the Members and

used for the past Eighteen (18) Years, and that respondent be awarded the cost and

disbursements in this proceeding as well as such other relief as may be just and proper.


Dated: Westchester, New York
        March 3, 2020


**TO:**                                          /s/ Stuart D. Serota
**Thomas Filardo, Esq**                          **BY:** Stuart D. Serota, Esq.
**Warshaw Burstein LLP**                         **Kaufman and Serota, P.C.**
Attorneys for Claimant *Straight A Company,*     Attorney for Respondent *LA Apparel, Inc.*
*LP*                                             5 International Drive - Suite 110
575 Lexington Avenue                             Rye Brook, New York 10573
New York, New York 10022                         Tel.: 212-732-6366
Tel.: 212-984-7700                               Fax: 212-385-3425


8