**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **L A APPAREL, INC., a/k/a** | : | |
| **LA APPAREL, INC.,** | | |
| | : | |
| **Petitioner** | | **MISC. ACTION NO. 3:21-285** |
| | : | |
| **v.** | | **(JUDGE MANNION)** |
| | : | |
| **STRAIGHT A COMPANY, LP,** | | |
| | : | |
| **Respondent** | | |

## <u>MEMORANDUM</u>

Before the court is petitioner L A Apparel, Inc., a/k/a LA Apparel, Inc.'s ("Petitioner" or "L A Apparel, Inc.") Petition to Confirm Arbitration Award (the "Petition"), (Doc. 1) and respondent Straight A Company, LP's ("Respondent" or "Straight A") Motion to Dismiss the Petition pursuant to Fed.R.Civ.P. 12(b)(1), (Doc. 10). For the following reasons, the Petitioner's Petition, (Doc. 1), will be **GRANTED in part and DENIED in part**, and the Respondent's Motion to Dismiss, (Doc. 10), will be **GRANTED in part and DENIED in part**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

This action stems from a prior arbitration proceeding between the Respondent and "LA Apparel, Inc." The Petitioner seeks this court to confirm

an arbitration award issued in the favor of "LA Apparel, Inc." on January 5, 2021, as modified on February 3, 2021. (Doc. 1).

Central to this suit is the issue of a discrepancy between the name of the Petitioner, which contains a space between the initial letters "L" and "A", and that of the named respondent to the underlying arbitration, "LA Apparel, Inc.", which lacks a space between the "L" and the "A." Petitioner was incorporated under New York law on August 16, 1994. (Doc. 1-2 at 14-16). As of May 28, 2021, no entity named "LA Apparel, Inc.", without the space, has been incorporated under New York law.[1] *Id*. at 7-8.

### a. The Operating Agreement

The underlying arbitration proceeding arises from the Operating Agreement of Concorde Apparel Company, L.L.C., dated August 25, 1994 (the "Operating Agreement"). (Doc. 1-2). Pursuant to the Operating Agreement, Respondent and "LA Apparel, Inc." agreed to form Concorde Apparel Company, L.L.C. ("Concorde") as its sole and equal members to engage in the business of styling and marketing a line of men's apparel. *Id*. at 1. The preamble of the Operating Agreement provides that "LA Apparel,

---

[1] The Petitioner on March 29, 2021 obtained an Assumed Name Certificate in New York State to use "LA Apparel, Inc." as an assumed name. (Doc. 12-10).

Inc. ('LA') is a New York corporation having an office at 1290 Avenue of the Americas, New York, New York, 10104." *Id.* at 2.

The Operating Agreement, moreover, is governed by Delaware Law and requires that parties "submit to binding arbitration…any issue relating to the operations of [Concorde] as to which they cannot agree." *Id.* at §§13.03, 13.15. (alteration added).

### b. <u>The Underlying Arbitration Proceeding and Award</u>

On December 31, 2019, pursuant to the Operating Agreement, the Respondent commenced an arbitration proceeding against "LA Apparel, Inc." before the American Arbitration Association ("AAA") and sought to enforce two sections of the Operating Agreement which provided for the allocation of Concorde's gross profits. (Doc. 1-2). At dispute in the underlying arbitration was the issue of which formula should be applied to distribute Concorde's annual profits from year 2018 onward: the formula set forth under §9.03 of the Operating Agreement (the "Waterfall"), as argued by the Respondent, or a formula used by the parties starting in 1997 (the "New Baseline")[2], as argued by "LA Apparel, Inc." (Doc. 1 at ¶¶12-13).

---

[2] As the Arbitrator had indicated in his Final Award, the New Baseline formula is as follows:

1. Five percent (5%) of net sales as a reserve for profits, paid to the Members in proportion to their respective Capital shares of Concorde (*i.e.* 50% each);

During the underlying arbitration proceeding, the parties engaged in documentary discovery and participated in hearings which spanned three days. (Doc. 1 at ¶16). After the hearings were closed, on January 5, 2021, Arbitrator George J. Krueger (the "Arbitrator") issued a "Final Award on the Merits in Favor of Respondent, LA Apparel, Inc." (the "Final Award"). The Final Award, in relevant part, states:

> I find that §9.03 of the Operating Agreement was amended such that the New Baseline reflects the manner by which the parties intended to allocate their gross operating profits. As noted, the parties' gross operating profits for years 2018 and 2019 have not been distributed because of the parties' disputes. My Award, therefore, orders and directs the parties to distribute their 2018 and 2019 gross operating profits (and all profits subsequent to 2019) pursuant to the New Baseline, i.e., granting the relief sought in ¶ 35 and in the WHEREFORE of Respondent's Answer, except as to the request for an award of costs and disbursements.
>
> In addition, AAA filing fees totaling $10,500.00 and the Arbitrator's compensation totaling $24,795.00, shall be shared evenly between the

2. Straight A received the higher of (a) six percent (6%) of adjusted net sales, or (b) forty-four and a half percent (44.5%) of what was termed the "profit distribution pool"; and
3. LA Apparel would receive either (a) fifty-five and a half percent (55.5%) of the profit distribution pool, *or* (b) if Straight A's 6% of adjusted net sales exceeded the forty-four and a half percent (44.5%) figure, then LA Apparel would receive the balance left over in the profit distribution pool after Straight A received its six percent (6%) of adjusted net sales from that distribution pool.

(Doc. 1-5 at 5).

> parties, such that Respondent shall reimburse Claimant the sum of $16,522.50.
>
> Any claims or defenses not directly addressed herein are DENIED.

(Doc. 1-5 at 12). On February 2, 2021, the Arbitrator issued a Modification of Award (the "Modification") to correct payment amounts regarding AAA filing fees and the Arbitrator's compensation.[3] (Doc. 1-5 at 13). The Final Award and Modification (together, the "Arbitration Award") constitute the arbitral award at issue in the instant action.

### c. Suits to Enforce the Arbitration Award

Subsequently, three separate proceedings were commenced – in state court, this court, and before the AAA – in effort to confirm the Arbitration Award.

On February 3, 2021, "LA Apparel, Inc." filed a petition in the Supreme Court of New York, New York County, seeking confirmation and enforcement of the Arbitration Award, including an order directing the Respondent to issue payments in accordance with the award. (Doc. 12-2). On March 11, 2021, the Respondent filed a cross-motion to dismiss the petition on various

---

[3] Specifically, the Modification accounts for a payment from "LA Apparel, Inc." to Straight A in the amount of $13,005.00 and provides that the "LA Apparel, Inc." shall "reimburse Claimant the sum of $3,517.50" instead of $16,522.50 as stated in the Final Award. (Doc. 1-5 at 12).

grounds, including that "LA Apparel, Inc." was not certified to transact business within the State of New York and thus prohibited from maintaining any action in New York. (Doc. 12-3 at 9). Later, "LA Apparel, Inc." withdrew its petition and, by a decision and order dated April 2, 2021, the Supreme Court of New York deemed the petition withdrawn. (Doc. 11 at 2).

On April 5, 2021, the Petitioner commenced the above-captioned action in this court by filing a Petition and supporting memorandum of law. (Docs. 1, 2). In it, the Petitioner requests that this court issue an order: (1) confirming the Arbitration Award, (2) directing Respondent to immediately issue payments from Concorde to Petitioner in the sum of $505,489.50 for year 2018 and $527,585.50 for year 2019, (3) directing Respondent to issue payments from Concorde to Petitioner for Petitioner's share of gross operating profits for year 2020 and each year thereafter, and (4) granting further relief as the court deems proper, along with costs and disbursements of this proceeding. (Doc. 1 at 11). On May 28, 2021, the Respondent filed the instant Motion to Dismiss and supporting brief, (Docs. 10, 11), to which the Petitioner filed a reply. (Doc. 12).

On January 13, 2022, the Respondent filed a letter informing this court that on December 20, 2021, the Petitioner had commenced a new arbitration proceeding before the AAA, *L A Apparel, Inc. a/k/a LA Apparel, Inc. v.*

*Straight A Company LP and Astro Apparel, Inc. and Concorde Apparel Company L.L.C.*, AAA Case No. 01-21-0018-0729 (the "New Arbitration"). (Doc. 17 at 2). The Petitioner also filed letters appraising this court of the details of the New Arbitration. (Docs. 18, 19).

In the New Arbitration, L A Apparel, Inc. asserted against Straight A, Astro Apparel, Inc. ("Astro")[4] and Concorde various claims, including "conversion, self-dealing, breach of fiduciary duties, and waste of company assets." (Doc. 17-1 at ¶9). Among its requested relief, L A Apparel, Inc. sought a decision ordering "[r]espondents to have Concorde pay the monies owed to Claimant pursuant to the Arbitration Award (in the event the federal court does not issue a judgment as to the dollar amount)."[5] *Id*. at 25.

Straight A then petitioned the New York Supreme Court for a permanent stay of the New Arbitration on the grounds that L A Apparel, Inc. was not party to the Operating Agreement and so cannot be compelled to arbitrate. (Doc. 18-1). Straight A also sought an interim stay of the New Arbitration pending the New York Supreme Court's ruling on its petition for permanent stay. Justice Margaret Chan, by an interim decision and order

---

[4] Astro is a company affiliated with Straight A. (Doc. 18 at 3).
[5] L A Apparel Inc., in its petition commencing the New Arbitration, indicated that in the event this court "does confirm the Arbitration Award, but does not set forth a dollar amount in the Judgment, then Claimant will herein seek the precise sums due to Claimant for 2018 and 2019." *Id*. at ¶19.

dated January 13, 2022, denied Straight A's application for an interim stay.[6]

(Doc. 18-1 at 7-8).

On February 20, 2022 Straight A and Astro filed counterclaims and third-party claims against L A Apparel, Inc. and its owner in the New

---

[6] In reaching her decision, Justice Chan observed:

As to petitioners' argument that they did not agree to arbitrate with the Claimant, that is L A Apparel, Inc., because Claimant's name has a space between the L and the A, it is noted that LA Apparel, Inc. and Straight A are both signatories to the Operating Agreement which requires arbitration of "any issue relating to the operations of [Concord]." […] Moreover, at oral argument, the parties did not dispute that the Claimant and LA Apparel, Inc., which petitioners have done business with under the Operating Agreement since 1995, are the same business entity and that the space between the L and the A was the result of an error made during registration with the Department of State of New York in 1994 (NYSCEF #12, 13). Under these circumstances, petitioner have not adequately shown that an interim stay is warranted.

As to petitioners' argument that as non-signatories to the Operating Agreement, Concord and Astro cannot be required to arbitrate, the court notes that Concord is the limited liability company, whose two members are Straight A and LA Apparel Inc, and which is the subject of the Operating Agreement. […] Additionally, under the Operating Agreement, Straight A delegated its responsibilities to Astro's predecessor Alperin Inc. […] Accordingly, petitioners are unlikely to succeed in arguing that Astro and Concord cannot be required to arbitrate (*see Aveta v Cavallieri,* 23 A3d 157, 183 [Del. Ch. 2010] [holding that a non-signatory to a contract will be estopped from arguing that a dispute-resolution provision does not apply when the non-signatory "consistently maintain[s] that other provisions of the same contract should be enforced to benefit him"]).
(Doc. 18-1 at 7-8).

Arbitration. Days later, on February 22, 2022, counsel for Straight A and Astro advised Justice Chan that they were withdrawing their petition to stay the arbitration. (Doc. 19 at 23).

Presently, the Petitioner's Petition, (Doc. 1), and the Respondent's Motion to Dismiss, (Doc. 10), are now ripe for the court's review. [7]

## II.    JURISDICTION

The court has subject matter jurisdiction over a petition to confirm the Arbitration Award. The Federal Arbitration Act, 9 U.S.C. §1 *et. seq*. (the "FAA") authorizes a party to an arbitration agreement to petition a federal

---

[7]    In its letter filed with the court on January 13, 2022, the Respondent requested oral argument or, alternatively, leave to file papers in further support of its Motion to Dismiss on the basis that the New Arbitration commenced by the Petitioner "is an attempt to either deprive this Court of its original jurisdiction and authority by seeking the same or similar relief from a AAA arbitrator as the Petitioner has sought from this Court…" (Doc. 17 at 2-3).

Based on L A Apparel, Inc.'s petition filed in the New Arbitration, (Doc. 17-1), the court finds Respondent's argument unconvincing. Notably, in the New Arbitration, L A Apparel, Inc. does not seek to confirm the Arbitration Award. While L A Apparel, Inc. seeks "to have Concorde pay the monies owed to Claimant pursuant to the Arbitration Award," its request in the New Arbitration is conditioned upon "the event the federal court does not issue a judgment as to the dollar amount" in the present suit. (Doc. 17-1 at 25). Additionally, L A Apparel, Inc.'s allegations against Straight A, Astro, and Concorde in the New Arbitration arise from various claims, including "conversion, self-dealing, breach of fiduciary duties, and waste of company assets." (Doc. 17-1 at ¶9). Such claims are not asserted in the present suit.

court for various forms of relief, including the confirmation of an arbitral award. 9 U.S.C. §1 *et seq*.; *Badgerow v. Walters*, 142 S.Ct. 1310, 1311 (2022). However, the FAA "does not itself create jurisdiction. Rather, the [Court] must have what we have called an 'independent jurisdictional basis' to resolve the matter." *Id*. (*quoting Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)). Here, the court has diversity jurisdiction over this matter under 28 U.S.C. §1332 because the parties are diverse and the amount in controversy exceeds $75,000. [8] (Doc. 1-1 ¶¶2-4).

---

[8] Petitioner alleges that it is "a New York corporation with its offices at 55 West 39th Street, New York, NY 10018" and is a "citizen of New York State." (Doc. 1 at ¶¶2, 4). A corporation is considered a citizen of both the state "by which it has been incorporated" and the state "where it has its principal place of business." 28 U.S.C. §1332(c)(1). As the Petitioner alleges that "its offices" are in New York, it follows that its principal place of business is also in New York. As such, it appears the Petitioner's citizenship is adequately alleged.

Petitioner also alleges that the Respondent is a "Pennsylvania limited partnership, with offices at 300 Brook Street, Scranton PA 18505, and, upon information and belief, none of the partners of Straight A is a resident of New York State." *Id*. at ¶3. Petitioner asserts that Respondent is a "citizen of the State of Pennsylvania." *Id*. at ¶4. For diversity of citizenship purposes, a limited partnership takes the citizenship of each of its partners. *Carden v. Arkoma Assoc.*, 494 U.S. 185 (1990). The citizenship of a natural person is the state where that person is domiciled. *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179 182 (3d Cir. 2008) (citation omitted). To be domiciled in a state a person must reside and intend to remain there indefinitely. *Krasnov v. Dinan*, 465 F.2d 1298, 1300-01 (3d Cir. 1972). As the Petitioner alleges that none of the partners of Respondent is a resident of New York, it follows that Respondent is not domiciled in New York. Accordingly, the court is satisfied that the Respondent is not a citizen of New York and Petitioner has adequately alleged diversity of citizenship.

### III.    STANDARD OF REVIEW

### a. <u>Confirmation of an Arbitral Award under the Federal Arbitration Act</u>

The Petitioner requests that the court confirm the Arbitration Award pursuant to Sections 6 and 9 of the FAA. A district court's review of an arbitration award made pursuant to the FAA is based on an "extremely deferential" standard. *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003) ("The net result of a court's application of this standard is generally to affirm easily the arbitration award[.]"). An arbitration award is enforceable "if its form can be rationally derived from either the agreement between the parties or the parties' submissions to the arbitrators and the terms of the arbitral award are not completely irrational." *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 258 (3d Cir. 2006) (citation omitted). The Third Circuit Court of Appeals "has held that there must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award." *News America Publications, Inc., Daily Racing Form Div. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d

---

Based upon the Petitioner's allegations and available documentary record, the court is satisfied that the diversity of citizenship is met.

Cir.1990) (*citing NF & M Corp. v. United Steelworkers of America*, 524 F.2d 756, 760 (3d Cir.1975)); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995) (observing that a court will set aside an arbitrator's decision "only in very unusual circumstances.") (citations omitted). This is due to a "national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008) (citations omitted).

Pursuant to 9 U.S.C. §9,

> at any time within one year after the award is made any party to the arbitration may apply to the court ... for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

In the present case, the Arbitration Award, as modified, was issued on February 2, 2021. The Petitioner filed its Petition on April 5, 2021, within the one-year period in which it was permitted to do so. Consequently, the court will examine the Respondent's arguments for dismissal of the Petition.

### b. __12(b)(1) Motion to Dismiss__

Rule 12(b)(1) provides for the dismissal of a complaint based on a "lack of subject-matter jurisdiction." Fed.R.Civ.P. 12(b)(1). "A motion to dismiss

under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." *Vieth v. Pennsylvania*, 188 F. Supp. 2d 532, 537 (M.D. Pa. 2002). Because the district court is a court of limited jurisdiction, the burden of establishing subject matter jurisdiction always rests upon the party asserting it. *See Kokkonen v. Guardian Life. Ins. Co. of America*, 511 U.S. 375, 377 (1994). Generally, however, district courts "enjoy substantial flexibility in handling Rule 12(b)(1) motions." *McCann v. Newmann Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006).

An attack on the court's jurisdiction may be either "facial" or "factual" and the "distinction determines how the pleading must be reviewed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack tests the sufficiency of the pleadings, while a factual attack challenges whether a plaintiff's claims fail to comport factually with jurisdictional prerequisites. *Id*. at 358; *see also S.D. v. Haddon Heights Bd. of Educ.*, 833 F.3d 389, 394 n. 5 (3d Cir. 2016). If the defendant brings a factual attack, the district court may look outside the pleadings to ascertain facts needed to determine whether jurisdiction exists, which is distinct from a facial attack. *Id*. If there are factual deficiencies, the court's jurisdictional determination may require a hearing, particularly where the disputed facts are material to finding jurisdiction. *McCann*, 458 F.3d at 290. Here, the Respondent complains of

factual deficiencies. The Petitioner argues that jurisdiction is proper despite these deficiencies as a matter of law.

### IV.   DISCUSSION

#### a. **Respondent's 12(b)(1) Motion to Dismiss for Lack of Standing**

Respondent first contends that the Petition should be dismissed in its entirety under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of standing. Specifically, it argues that the Petitioner lacks standing because it was not a party to the Arbitration Award and the Operating Agreement, but rather "LA Apparel, Inc." – which lacks a space between the "L" and "A" – was the pertinent party.

However, the Petitioner maintains that references to "LA Apparel, Inc." in the Operating Agreement and arbitration proceeding amounted to a mere typographical error and that, because the litigants have treated L A Apparel, Inc. and "LA Apparel, Inc." as the same entity over the course of their business dealings, the Respondent should be estopped from asserting that the Petitioner lacks standing to sue on the basis that the two entities are distinct.

Standing "is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 117 (3d Cir. 1997) (*citing Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 471–73 (1982)). The party seeking to invoke federal jurisdiction bears the burden of establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted). It is "proper" for a district court, even on a motion to dismiss, "to require [the plaintiff] to go beyond…general allegations in the complaint and allege particularized facts supportive of its standing." *Newark Branch NAACP v. Town of Harrison,* 907 F.2d 1408, 1415 & n. 10 (3d Cir. 1990) (*citing Warth v. Seldin,* 422 U.S. 490, 501–02 (1975)). While it is the burden of the plaintiff to "clearly and specifically set forth facts sufficient to satisfy [the] standing requirements," the level of specificity necessary to avoid dismissal for lack of standing should not be "exaggerated." *Hosp. Council of W. Pa. v. City of Pittsburgh,* 949 F.2d 83, 86–87, 88 (3d Cir. 1991). When standing is challenged on the basis of the pleadings, as it is here, the court is to "accept as true all material allegations

- 15 -

of the complaint, and ... construe the complaint in favor of the complaining party." *Pennell v. City of San Jose,* 485 U.S. 1, 7 (1988) (*quoting Warth,* 422 U.S. at 501).

The Third Circuit Court of Appeals has set forth three requirements for Article III constitutional standing:

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,* 140 F.3d 478, 484–85 (3d Cir. 1998) (*citing Defenders of Wildlife,* 504 U.S. at 560–61, 112 S.Ct. 2130); *accord Soc'y Hill Towers Owners' Ass'n v. Rendell,* 210 F.3d 168, 175–76 (3d Cir. 2000).

Presently, the Petitioner argues that the Respondent is barred from asserting its lack of standing defense under the following estoppel doctrines: (1) equitable estoppel, (2) collateral estoppel, (3) quasi-estoppel, and (4)

judicial estoppel.[9] Accordingly, the court proceeds to consider the Petitioner's estoppel arguments and finds the doctrine of quasi-estoppel extends to the present circumstances. Moreover, on the basis of the Petitioner's averments and proffered evidence, the court finds that the Petitioner has met its burden in establishing Article III standing,

### i. Quasi-Estoppel

The Petitioner argues that the doctrine of quasi-estoppel applies to prevent the Respondent from asserting that the Petitioner and "LA Apparel, Inc." are different entities. Having reviewed the record, the court finds the Petitioner's argument to be convincing. As an initial matter, the Petitioner's quasi-estoppel argument raises the foundational question of whether the application of the estoppel doctrine in this case is controlled by federal or state law. A federal court sitting in diversity, like here, applies the substantive law, including conflict of law rules, of the state in which it sits. *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177, 1179 (3d Cir. 1972) (*citing Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941)).

---

[9] Because the Petitioner does not raise an argument of corporation by estoppel, the court will not address such a theory.

The issue currently before the court is whether the Petitioner, a non-party to the Arbitration Award and non-signatory to the Operating Agreement, may enforce the Arbitration Award. In determining whether a non-signatory is bound to a contract, or may enforce an arbitration agreement, a court must apply state law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (*quoting* 21 R. Lord, Williston on Contracts § 57:19, p 183 (4th ed. 2001)) ("Because 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel,'" nonparties to a contract are not categorically barred from relief pursuant to the FAA). "[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). Here, because the Operating Agreement is "governed exclusively…by the laws of the State of Delaware," the court applies Delaware law governing the validity, revocability, and enforceability of contracts in determining the applicability of the Petitioner's quasi-estoppel theory. (Doc. 1-2 at ¶13.03).

- 18 -

"Under Delaware law, the doctrine of quasi-estoppel applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816 (Del. 2015) (citations omitted). "To constitute this sort of estoppel the act of the party against whom the estoppel is sought must have gained some advantage for himself or produced some disadvantage to another." *Id*. Quasi-estoppel prevents a litigant "from shifting to a contrary position touching on the same facts or transaction" and "the earlier position was then to the advantage of the [litigant] but that it is now to the [litigant's] advantage to shift his position." *Amgen Inc. v. Sanofi*, No. 14-1317-RGA, 2019 WL 259099 (D.Del. Jan. 18, 2019) (*quoting In re Baker Hughes Inc.*, 215 F.3d 1297, 1301-02 (Fed. Cir. 2000)) (alterations in the original)). The doctrine "only applies when the earlier position amounts to a misstatement of fact, not of law," and the misstatement must be one on which the opposing party "reasonably relied." *Id*. (*quoting In re Baker Hughes Inc.*, 215 F.3d 1297, 1301-02 (Fed. Cir. 2000)).

Further, the Supreme Court has recognized the doctrine of quasi-estoppel and, in *Simmons v. Burlington, C.R. & N.R. Co.,* 159 U.S. 278 (1895), observed that:

> […] 'When a party, with full knowledge, or at least
> with sufficient notice or means of knowledge, of
> his rights, and of all the material facts, freely does
> what amounts to a recognition of the transaction
> as existing, or acts in a manner inconsistent with
> its repudiation, or lies by for a considerable time,
> and knowingly permits the other party to deal with
> the subject-matter under the belief that the
> transaction has been recognized, or freely
> abstains for a considerable length of time from
> impeaching it, so that the other party is thereby
> reasonably induced to suppose that it is
> recognized, there is acquiescence; and the
> transaction, although originally impeachable,
> becomes unimpeachable in equity […]'

*Id*. (*quoting* 2 Pom. Eq. Jur. §965). The court initially observes that at the time of commencing the underlying arbitration, the Respondent had knowledge of enough facts to put it on notice that L A Apparel, Inc., and not "LA Apparel, Inc.", was the "real name" of the Petitioner as set forth in its certificate of incorporation. N.Y. Gen. Bus. Law §130(1). Indeed, L A Apparel, Inc. was formed as a New York corporation on August 16, 1994, over twenty-five years before the Petitioner commenced the arbitration underlying this matter on December 31, 2019. (Doc. 11-2 at 15-16); (Doc. 1-3).

Here, the Petitioner has introduced evidence showing that, from the time of the Petitioner's incorporation to the Respondent's opposition to Petitioner's first attempt to confirm the Arbitration Award in state court, the Respondent had treated L A Apparel, Inc. and "LA Apparel, Inc." as the same

- 20 -

entity and, as a result of doing so, received benefits pursuant to a business relationship.

The record shows that during the parties' over 25-years course of dealings, L A Apparel, Inc.'s president and owner Lee Wattenberg ("Wattenberg") has executed contracts and other documents on behalf of "LA Apparel, Inc." in dealings relating to Concorde without any objection from the Respondent. Under the Operating Agreement, Wattenberg signed on behalf of "LA Apparel, Inc." and the Respondent's owner, James Alperin ("Alperin"), signed on behalf of the Respondent. (Doc. 1-2). Alperin later testified under oath at arbitration that the Operating Agreement defined the scope of the relationship between LA Apparel and Straight A vis-à-vis Concorde, was in "full force and effect," and was the result of "two years [of] fighting over every word" of the agreement. (Doc. 12-1 at 6, 7). Moreover, in Concorde's annual letters to its accounting firm relating to Concorde's financial audit, Alperin, as early as March 19, 2004, signed on behalf of the Respondent and Wattenberg signed on behalf of "LA Apparel, Inc." (Doc. 12-5). Concorde's federal tax returns for the years 2013 through 2019, which were allegedly filed under Alperin's instructions, listed "LA Apparel, Inc." as a corporation and included a related Employer Identification Number. (Doc. 12-1 at 9; Doc. 12-6). Alperin also issued checks, dated April 4, 2001, April 9, 2008, and

March 9, 2012, "payable to the order of LA Apparel C/O Lee Wattenberg." (12-7).

Respondent commenced the underlying arbitration against "LA Apparel, Inc." on December 31, 2019 and, over the course of the arbitration, did not raise an issue regarding a distinction between L A Apparel, Inc. and "LA Apparel, Inc."[10] (Doc. 12-1 at 8). The Respondent did not raise this issue until after the Arbitration Award was issued in "LA Apparel, Inc.'s" favor, when it moved to dismiss "LA Apparel Inc.'s" petition to confirm the Arbitration Award before the New York Supreme Court.[11] (Doc. 12-9).

In light of such evidence, the court finds that the Respondents are estopped from challenging Petitioner's standing to confirm the Arbitration Award under the doctrine of quasi-estoppel because – for a substantial

---

[10] In its Statement of Claim filed in the underlying arbitration, Straight A made no mention of L A Apparel, Inc. and referred to only as "LA Apparel, Inc." As part of its relief sought, the Straight A demanded that the arbitrator order "Respondent LA Apparel, Inc. to direct Lee Wattenberg, in his capacity as manager of Concorde Apparel, L.L.C., to authorize and sign all checks necessary to make distributions of the gross net profits of Concorde Apparel, L.L.C...." (Doc. 12-1 at 8).

[11] The Respondent argued that "LA Apparel, Inc." lacked capacity to sue in New York state court because it failed to obtain a certificate of doing business from the State of New York and cannot seek to confirm the Arbitration Award. (Doc. 12-9 at 19). Curiously, in its instant Motion to Dismiss, the Respondent no longer asserts that "LA Apparel, Inc." cannot seek to confirm the Arbitration Award. Instead, it maintains that L A Apparel, Inc. cannot seek to confirm the Arbitration Award.

period of time – the Respondent has treated "LA Apparel, Inc." and L A Apparel, Inc. as the same entity, a representation on which the Petitioner reasonably relied. The Petitioner has pointed to specific evidence showing that, since around 1994, the Respondent had knowledge of enough facts to put it on notice that "LA Apparel, Inc." is not an entity that is incorporated under New York law, as described under the Operating Agreement. The Respondent nevertheless continued to transact business dealings under the Operating Agreement for over two decades and, as a result, enjoyed the benefits it accrued as a partial owner of Concorde.[12] *Compare Town of Smyrna v. Kent County Levy Court*, No. Civ.A. 244-K, 2004 WL 2671745, at *4 (Del.Ch. Nov. 9, 2004) (enforcing arbitration provision against non-signatory as "[e]quity will not allow a party to sue to enforce the provisions of a contract that it likes, while simultaneously disclaiming the provisions that it does not.").[13]

---

[12] Given the court's ruling with regards to quasi-estoppel, we find it unnecessary to determine whether the Respondent's lack of standing defense is also estopped under theories of equitable estoppel, collateral estoppel, and judicial estoppel.

[13]     Further, to the extent the Respondent argues that a non-party to an arbitration necessarily lacks standing to petition a federal court to confirm an arbitration award, Respondent has not cited to any binding caselaw in support of its position. (Doc. 11 at 9-11).

    While 9 U.S.C.A. §9 provides that "any party to the arbitration" may apply to the court for a confirmation of the award, this court observes that there are cases that have allowed a nonparty to an arbitration Article III

Furthermore, in light of the Petitioner's averments and evidence proffered to show that L A Apparel, Inc. and "LA Apparel, Inc." have been treated as "one and the same" by the parties for a period of over twenty-five years, the court finds that the Petitioner has met its burden in establishing standing. (Doc. 12 at 5). To reiterate, in order to demonstrate Article III standing, the Petitioner must establish that it has (1) suffered an injury-in-fact which is concrete and particularized and actual or imminent; (2) that is fairly traceable to the Respondent's challenged actions, and (3) that is likely

---

standing to confirm an arbitral award. *See, e.g.*, *Great Oak NC Lender, LLC v. Cornblum*, Nos. 2:12–CV–34–MR, 2:12–CV–34–MR, 2014 WL 4311039 (W.D.N.C. Aug. 29, 2014) (permitting intervenor plaintiff standing to confirm an arbitral award on the basis that plaintiff held was an assignee of a party to the award).

Respondent indicates that "[f]ederal courts have held that a non-party to an arbitration proceeding lacks the necessary standing to confirm the ensuing award." (Doc. 11 at 10). In support of this statement, the Respondent cites to *Local 399 Staff Union v. SEUI, United Health Care Workers – West*, No. CV 12-816, 2012 WL 13012717 (C.D. Cal. 2012) and *Bryant v. Bell Atl. Med., Inc.*, 288 F.3d 124, 131 (4th Cir. 2002). *Local 399 Staff Union* and *Bryant* concluded that an individual employee represented by a union lacked standing to confirm an arbitration award to which the employee's union, but not the employee, was a party. However, these cases concern an employee's attempt to enforce an arbitration award arising from a collective bargaining agreement between his union and employer and appear to be factually distinguishable from the present case, which concerns a plaintiff's attempt to enforce an arbitration award based on the allegation that it is effectively the same entity as a named party to the award.

As such, to the extent the Respondent argues that a non-party to an arbitration necessarily lacks standing to confirm an arbitral award, this court does not find its argument persuasive.

redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Here, as previously discussed, the Petitioner has set forth clear and specific facts showing that the Respondent has treated the Petitioner and "LA Apparel, Inc." as the same entity over their course of dealings relating to the Operating Agreement. Thus, the Petition adequately alleges that the Petitioner suffered an injury in fact fairly traceable to the Respondent's challenged actions. *Hosp. Council of W. Pa. v. City of Pittsburgh,* 949 F.2d 83, 86–87, 88 (3d Cir. 1991) (holding that a complaint met standing requirements where the allegation it set forth were clear and specific, rather than "hypothetical" or "conjectural"). Petitioner's injury, furthermore, is likely redressable by this court's confirmation of the Arbitration Award. Accordingly, the court will not dismiss the Petition in its entirety for lack of standing.

### b. Confirmation of Arbitration Award and Respondent's 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Respondent argues in the alternative that the Petition to Confirm Arbitration Award should be dismissed in part pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Specifically, it argues that the Petitioner "impermissibly seeks to enlarge the Award" by requesting that this

- 25 -

court enter into a judgment directing the Respondent to: (1) issue payments from Concorde to Petitioner in the sum of $505,489.50 for 2018 and the sum of $527,585 for 2019 and (2) issue payments from Concorde to Petitioner for 2020. (Doc. 11 at 10).

In opposing the partial Motion to Dismiss, the Petitioner contends that the Respondent should be estopped from claiming that the court cannot order the Respondent to issue such payments from Concorde to the Petitioner. While the Petitioner recognizes that the numbers for 2020 "have not been finalized," it argues that its requested sums for 2018 and 2019 are determined from financials which were undisputed during the underlying arbitration proceedings. In reaching its requested sums for years 2018 and 2019, the Petitioner based its calculations upon financials that were affirmed by Alperin during his arbitration testimony and reflected in documentary exhibits which the Respondent had offered into evidence at arbitration.

The court observes that the FAA's "provision for judicial confirmation carries no hint of flexibility." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008). "On application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.'" *Id.* (*quoting* 9 U.S.C.A. §9). Here, the Petitioner petitions the court to confirm the

Arbitration Award and neither party seeks to vacate or modify the award. As such, having previously determined that the Petitioner has standing to file this suit, the court must grant the Petition to Confirm Arbitration Award to the extent that it seeks confirmation of the contents of the arbitral award.

The court next considers whether there is merit to the Respondent's defense that the Petition, in seeking that this court enter judgment directing the Respondent to issue specific payments, goes beyond the Arbitration Award and so falls outside the jurisdiction of this court. In opposing the Petition to Confirm Arbitration Award, the Respondent argues that because the Arbitration Award only "directs the parties to distribute their 2018 and 2019 gross operating profits (and all profits subsequent to 2019) pursuant to the New Baseline" and does not specify the amounts to be distributed, ordering the Respondent to distribute the requested sums falls outside of this court's subject matter jurisdiction under 9 U.S.C.A. §9. The court finds merit in such an argument.

As a general matter, a confirmation of an arbitration award under the FAA, 9 U.S.C. §§1, *et seq.*, is a "summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Teamsters Local 177 v. United Parcel Serv*., 966 F.3d 245, 248 (3d Cir. 2020) (*quoting*

*Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). As the Third

Circuit has explained in *Teamsters Local 177*,

> Confirming an arbitration award under §9 is not to be confused with litigating a dispute over the validity or accuracy of that award under §10 or §11, or seeking later to enforce that arbitration award where there is noncompliance. Section 9 expressly provides for confirmation in the absence of such disputes. Once a court confirms an arbitration award and makes it a judgment of the court, noncompliance with that order is separately analyzed. *See Am. Nursing Home v. Local 144*, No. 89-cv-1704, 1992 WL 47553, at *2 (S.D.N.Y. Mar. 4, 1992) ("The issues of compliance and confirmation are distinct.... [C]onfirmation of an arbitration award ... is not a novel inquest into the merits of the award or compliance with it...." (internal citation and quotation marks omitted)). Without a confirmation order, the parties would essentially have to relitigate the case via a suit to enforce the arbitration award. But where there is such an order, and one of parties violates it, the court applies the analysis as when one of its orders is defied—it can penalize the non-complying party through contempt proceedings or the issuance of injunctive relief. Contempt proceedings and a trial over the underlying dispute are clearly very different than the summary proceeding provided for by §9.

966 F.3d at 248; *see also Zeiler v. Deitsch*, 500 F.3d 157 (2d Cir. 2007)

("Confirmation ... is a summary proceeding ..., which is not intended to

involve complex factual determinations, other than a determination of the

limited statutory conditions for confirmation or grounds for refusal to confirm.... At the confirmation stage, the court is not required to consider the subsequent question of compliance.").

Here, the Arbitration Award, which comprises over ten pages of factual evaluation and legal analysis, concludes that Concorde's operating profits from year 2018 onward are to be allocated pursuant to the New Baseline formula. However, in reaching this conclusion, the Arbitration Award does not address the issue of the underlying financial numbers which should be used in the New Baseline calculation. (Docs. 1-5). It also does not address the specific amounts to be distributed in accordance with the New Baseline formula. Notably, the Arbitration Award states that "[a]ny claims or defenses not directly addressed herein are DENIED." (Doc. 1-5 at 12).

Because the Arbitration Award is silent as to the financial numbers to be applied to the New Baseline formula, is silent as to the specific amounts to be distributed under such formula, and expressly provides that any unaddressed claims are denied, the court finds that judgment directing the Respondent to distribute to the Petitioner the sum of $505,489.50 for 2018 and the sum of $527,585 for 2019 would go beyond a confirmation of the Arbitration Award pursuant to 9 U.S.C.A. §9.

Moreover, the court observes that a dispute as to the specific amounts to be distributed per the New Baseline formula should be reserved for arbitration, as provided for under the Operating Agreement. Presently, whereas the Petitioner asserts that Concorde's 2018 financials are agreed-upon, the Respondent argues that "Concorde's gross operating profits for the 2019 and 2020 fiscal years are impossible to determine at this time" and that the parties have not agreed on the financial statements for those fiscal years. (Doc. 11 at 12). Section 9.04 (b) of the Operating Agreement governs the distributions of Concorde's profits and provides that disagreements regarding Concorde's financial statements are subject to arbitration:

> Distributions. […] (b) Within 90 days after the end of each fiscal year of the Company, the Members shall endeavor to agree on the financial statements of the Company for such year. If they are unable to agree within such time period, they shall invoke the arbitration provisions of section 13.15, below. Promptly after the financial statements have been agreed to, or promptly after the arbitrator shall have rendered his decision, the Company shall distribute to each Member the undistributed amounts of gross profit for the preceding year…

(Doc. 1-2 at 34). Relevant here, Section 13.15 of the Operating Agreement provides for binding arbitration of disputes pursuant to the rules of the AAA. *Id.* at 52-53.

Further, the court does not find that extending the various principles of estoppel, as asserted by the Petitioner, would be appropriate under the present circumstances. The Petitioner argues that the Respondent should be estopped from asserting that the amounts to be distributed under the New Baseline formula remain disputed under the following estoppel doctrines: equitable estoppel, quasi-estoppel, collateral estoppel, and judicial estoppel.

Initially, the Petitioner's reliance on the doctrines of collateral estoppel and judicial estoppel are misplaced. Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001) (internal quotation marks omitted). Collateral estoppel, also referred to as issue preclusion, "means [ ] that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (*quoting Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). Here, because the Arbitration Award rendered a judgment in favor of "LA Apparel, Inc." and does not address the amounts to be distributed or the numbers to be used to calculate those amounts, the doctrines of judicial estoppel and collateral

estoppel cannot be applied to estop the Respondent from contesting the amounts to be allocated under the New Baseline formula.

Further, the court finds that extending the doctrines of equitable estoppel and quasi-estoppel to be inappropriate here. Under Delaware law, the doctrine of equitable estoppel may be invoked "when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment." *Wilson v. American Ins. Co.,* 209 A.2d 902, 903–04 (Del. 1965). To establish equitable estoppel, "it must be shown that the party claiming estoppel lacked knowledge or the means of obtaining knowledge of the truth of the facts in question, relied on the party against whom estoppel is claimed, and suffered a prejudicial change in position as a result of that reliance." *Burge v. Fidelity Bond & Mortgage Co.,* 648 A.2d 414, 420 (Del. 1994) (citations omitted). In the present case, the Petitioner has made no averment suggesting that the Respondent induced the Petitioner to change position to the latter's detriment. As such, the court declines to apply equitable estoppel.

As to quasi-estoppel, to invoke the doctrine, "the act of the party against whom the estoppel is sought must have gained some advantage for himself or produced some disadvantage to another." *RBC Capital Markets, LLC v. Jervis,* 129 A.3d 816 (Del. 2015) (citations omitted). Here, even if the

Respondent previously affirmed Concorde's financials for years 2018 and 2019 during the underlying arbitration proceeding, given that the Arbitration Award is silent as to the issue of the final financials for those years, it does not appear that the Respondent's prior admissions regarding Concorde's financials for years 2018 and 2019 "gained some advantage for [itself] or produced some disadvantage to another." *Id*. (alteration added). Thus, the court does not find that extending the doctrine of quasi-estoppel to preclude the Respondent from challenging the 2018 and 2019 financials to be used in the New Baseline formula would be entirely appropriate under the present circumstances.

Accordingly, the court will confirm the Arbitration Award. However, the court will not direct Respondent to issue payments from Concorde to Petitioner in the sum of $505,489.50 for 2018 and the sum of $527,585.50 for 2019, as we find that such a judgment would go beyond a summary confirmation of the Arbitration Award pursuant to 9 U.S.C.A. §9. *Compare United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 593 (1960) (holding that district court had jurisdiction over a motion to remand a dispute about an arbitration award which failed to specify amount to be awarded, and reversed with instruction that an order be entered

requiring that the unresolved issue regarding payment amount be arbitrated in the original arbitration proceeding).

## V.    CONCLUSION

For the foregoing reasons, the Petitioner's Petition to Confirm Arbitration Award, (Doc. 1), is **GRANTED in part and DENIED in part**. The Respondent's Motion to Dismiss, (Doc. 10), is **GRANTED in part and DENIED in part**.

Insofar the Petitioner seeks costs and disbursements of this proceeding, the Petitioner is **ORDERED** to submit to the Court, in writing, on or before December 31, 2022, a motion for attorney's fees and costs fully supported by appropriate documentation.

An appropriate order follows.


*s/Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: December 5, 2022**
21-285-01